UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| NEW ENGLAND HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) ) | Civil Action No. |
| v. | ) ) | 16-11079-FDS |
| MASSACHUSETTS THOROUGHBRED HORSEMEN'S ASSOCIATION, INC. AND MIDDLEBOROUGH AGRICULTRUAL SOCIETY | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM AND ORDER
ON DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, J.**

This action arises out of an alleged violation of the Interstate Horseracing Act. Plaintiff New England Horsemen's Benevolent and Protective Association alleges that defendants Massachusetts Thoroughbred Horsemen's Association and Middleborough Agricultural Society violated the Interstate Horseracing Act by entering into a "purse agreement" under which defendants agreed to permit simulcasting of, and interstate off-track betting on, races hosted by Middleborough Agricultural Society at Brockton Fairgrounds racetrack. Plaintiff contends that it, and not the Massachusetts Thoroughbred Horsemen's Association, is the only group authorized by the Interstate Horseracing Act to enter into such agreements.

Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendants contend that plaintiff has failed to allege an actual violation of the

Interstate Horseracing Act—that is, has failed to allege that any party has accepted interstate off-track wagers without first obtaining the proper consent—and that therefore the complaint does not present a federal question sufficient to confer subject-matter jurisdiction and has failed to state a claim upon which relief can be granted.

For the reasons set forth below, the motions to dismiss will be granted.

**I.     Background**

    **A.     The Interstate Horseracing Act**

The Interstate Horseracing Act of 1978 (the "IHA"), 15 U.S.C. § 3004(a), regulates interstate off-track wagering on horseracing. In passing the IHA, "Congress recognized that the unrestricted proliferation of off-track wagering would hurt the horseracing industry by decreasing attendance at racetracks which, in turn, would reduce the number of horses needed to compete and the number of individuals employed in the industry." *Kentucky Div., Horsemen's Benev. & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1414 (6th Cir. 1994). The IHA regulates, but does not prohibit, interstate off-track wagering by "balancing the interests of the horseracing industry against those of the interstate off-track wagering industry." *Id.* Congress thus sought to support both the horseracing and interstate off-track wagering industries, but to do so in a relatively narrow way that otherwise left states in control of gambling within their borders. *See id.*; 15 U.S.C. § 3001.

The IHA enlists the horseracing industry itself to help regulate the growth of interstate off-track wagering, *Kentucky Div. Horsemen's Benev & Protective Ass'n*, 20 F.3d at 1414, and to ensure that horsemen are compensated for their role in enabling off-track betting, *Churchill Downs, Inc. v. Thoroughbred Horsemen's Group, LLC*, 605 F.Supp.2d 870, 882 (W.D. Ky.

2009). To this end, the IHA prohibits off-track betting systems[1] from accepting interstate off-track wagers absent the consent of (1) "the host racing association,"[2] (2) "the host racing commission,"[3] and (3) "the off-track racing commission."[4]  15 U.S.C. § 3004(a).  However, a host racing association cannot provide its consent unless it first has a written agreement with "the horsemen's group" that sets forth the terms and conditions for the distribution of off-track betting revenues.  15 U.S.C. § 3004(a)(1)(A).  "Horsemen's group" is defined, "with reference to the applicable host racing association," as "the group which represents the majority of owners and trainers racing there, for the races subject to the interstate off-track wager on any racing day."  15 U.S.C. § 3002(12).

**B.**     **Factual Background**

The facts are set forth as alleged in the complaint.

The New England Horsemen's Benevolent and Protective Association, Inc. ("NEHBPA") is a Massachusetts non-profit corporation that represents Massachusetts horsemen in contract negotiations with Massachusetts racetracks.  (Compl. ¶¶ 2, 17).  As stated in its bylaws, the purpose of the NEHBPA is to "advocate[] in the best interests and property rights of the horsemen" on issues such as "purse monies; purse contracts; sale of live racing signal; . . . inter-track wagering contracts and fees; off-track betting contracts and fees; . . . safety, repair and improvement of all racetrack facilities; and all other matters of interest that may affect

---

[1] The IHA defines "off-track betting system" as "any group which is in the business of accepting wagers on horseraces at locations other than the place where the horserace is run . . . ."  15 U.S.C. § 3002(5).

[2] The IHA defines "host racing association" as "any person who, pursuant to a license or other permission granted by the host state, conducts the horserace subject to the interstate wager."  15 U.S.C. § 3002(9).

[3] The IHA defines "host racing commission" as "that person designated by State statute or, in the absence of statute, by regulation, with jurisdiction to regulate the conduct of racing within the host State."  15 U.S.C. § 3002(10).

[4] The IHA defines "off-track racing commission" as "that person designated by State statute or, in the absence of statute, by regulation, with jurisdiction to regulate off-track betting in that State."  15 U.S.C. § 3002(11).

horsemen." (*Id*. ¶ 17). NEHBPA has been the sole representative of Massachusetts horsemen since its incorporation in 1992. (*Id*. ¶ 16). It has approximately 826 members. (*Id.*).

The Massachusetts Thoroughbred Horsemen's Association, Inc. ("MassTHA") was formed in 2015 by several members of NEHBPA who had unsuccessfully sought leadership positions in that organization's most recent elections. (*Id*. ¶¶ 16, 18). MassTHA has not, as of yet, held elections for executive officers or members of the Board of Directors. (*Id*. ¶ 19). Absent elections, William Lagorio leads MassTHA as its self-appointed president. (*Id*. ¶¶ 18, 19). The complaint alleges that MassTHA has few, if any, member horsemen who have consented to be represented by the organization. (*Id.* ¶ 4).

In 2015, the Middleborough Agricultural Society ("MAS") submitted an application to the Massachusetts Gaming Commission to run a fifteen-day live racing meet at the Brockton Fairgrounds racetrack in 2016. (*Id.* ¶ 23). The Brockton Fairgrounds track had not been used since 2001, when several thoroughbred horses were injured during a race. (*Id.* ¶ 9). The MAS application was granted. (*Id.* ¶ 25). The NEHBPA then sought to negotiate a purse agreement with MAS, hoping to reach an agreement that would include measures to ensure a safe meet at Brockton. (*Id.* ¶ 26).

According to the complaint, MAS refused to negotiate with NEHBPA. (*Id.*). Instead, in early 2016, MAS entered into a purse agreement with MassTHA to conduct live thoroughbred racing at the Brockton Fairgrounds during 2016 and 2017. (*Id.* ¶ 5). The complaint alleges that MassTHA entered into the contract with MAS without any bargaining or advocacy on behalf of horsemen. (*Id.* ¶ 37). The contract allegedly fails to address multiple safety concerns with respect to the racetrack. (*Id.* ¶ 32). It also authorizes MAS to negotiate with simulcast and receiving facilities for the simulcasting of live races, and the conduct of off-track wagering on

4

races, held at Brockton. (*Id.* ¶ 34). It further states that "MAS shall not be making any payments to MassTHA or the Horsemen" for any reason," presumably including the sharing of proceeds derived from any off-track wagering. (*Id.*). Thus, all profits derived from any simulcasting and off-track wagering are to be retained by MAS. (*Id.* ¶ 35).

In order to race at Brockton, a horseman must sign and submit a stall application to MAS. The stall application states as follows:

> By signing and submitting this stall Application the undersigned does hereby appoint the Massachusetts Thoroughbred Horsemen's Association, Inc. ("MassTHA") to act as its sole and exclusive representative for the purposes of negotiating and executing, or refusing to execute, with Middleborough Agricultural Society any and all contracts and agreements relating to Thoroughbred Racing at the Brockton Fairgrounds during the subject racing meeting . . . .

(*Id.* ¶ 44).

The complaint further alleges that MassTHA has published false statements about NEHBPA on its website. (*Id.* ¶ 21). The statements include accusations that NEHBPA does not legitimately represent Massachusetts horsemen, does not act in their best interests, and is diverting horserace development funds to out-of-state horsemen. (*Id.*).

### C. Procedural Background

Plaintiff NEHBPA filed the complaint in this action on June 9, 2016. The complaint alleges that MassTHA and MAS violated the IHA by authorizing simulcasts of, and interstate off-track wagering on, live races held at the Brockton Fairgrounds without the consent of the NEHBPA (Count One). NEHBPA contends that "[u]nder the IHA definition, until a race occurs at a racetrack and the majority of horsemen elect a different organization to represent their interests, the NEHBPA continues to represent the majority of horsemen who race in Massachusetts," (Compl. ¶ 53) and therefore it is the only horsemen's group that can consent to

off-track wagering. (*Id.* ¶ 56). The complaint further seeks a declaratory judgment that NEHPBA is the sole and exclusive "horsemen's group," as defined in the IHA, authorized to negotiate on behalf of Massachusetts horsemen and to consent to simulcasting and off-track wagering (Count Two). The complaint also alleges two state-law violations: tortious interference with advantageous relations (Count Three) and defamation (Count Four).

Defendants have moved to dismiss the complaint. Defendant MassTHA has moved to dismiss Counts One and Two under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. As to Counts Three and Four, MassTHA contends that the Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Defendant MAS has moved to dismiss the complaint in its entirety under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set

forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

#### A. Jurisdiction

Federal district courts may exercise jurisdiction over civil actions arising under federal laws.  28 U.S.C. § 1331.  "A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).  Furthermore, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (stating that federal courts have jurisdiction over state law claims that "derive from a common nucleus of operative fact" as federal claims such that "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case'").

The complaint alleges a claim under the IHA.  It contends that MassTHA is not "the horsemen's group" as defined by § 3002 and, therefore, is not authorized under § 3004 to consent on behalf of horsemen to interstate off-track wagering.  Section 3006 of the statute authorizes "the horsemen's group" to "commence a civil action against any person alleged to be in violation of this chapter . . . ." 15 U.S.C. § 3006(a).  Plaintiff's assertion of a federal cause of

7

action "cannot be said to be so insubstantial, implausible, foreclosed by prior decisions of [the First Circuit or Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction" of this Court. *Oneida Indian Nation of N.Y. State v. Oneida County, N.Y.*, 414 U.S. 661 (1974). This Court therefore has subject-matter jurisdiction over this case.

However, for the reasons stated below, the complaint fails to state a claim under the IHA for which relief can be granted. While this Court retains the discretion to exercise supplemental jurisdiction over the remaining state-law claims, *see Arbaugh*, 546 U.S. at 514, it will decline to exercise that jurisdiction.

### B.  Failure to State a Claim

The complaint fails to allege a violation of the IHA. The IHA prohibits only the *receipt* of interstate off-track wagers absent the consent of the host racing association, which itself must be pursuant to a written agreement with the horsemen's group. 15 U.S.C. § 3004(a). In the context of this case, the IHA therefore prohibits any off-track betting system from accepting wagers made on a race held at the Brockton Fairgrounds without the consent of MAS (as the host racing association) and the Massachusetts Gaming Commission (as the host racing commission and off-track racing commission). The IHA further requires that, before consenting to off-track betting, MAS must have a written agreement regarding the distribution of off-track betting revenues with the horsemen's group that represents the majority of the owners and trainers racing in the races subject to the interstate off-track wager on any given day.

The complaint alleges that NEHBPA is the relevant horsemen's group and, therefore, MAS and MassTHA violated the Act simply by entering into an agreement under which

MassTHA consented to off-track wagering.[5] That argument is flawed for two reasons.

First, though the IHA is no paragon of clarity, it appears that MassTHA is the relevant "horsemen's group" as defined in the Act. Section 3002(12) defines "horsemen's group" as "the group which represents the majority of owners and trainers racing [at a particular track], for the races subject to interstate off-track wager on any racing day." The statute thus defines "horsemen's group" in terms of who represents the majority of those racing on a particular track on a particular day. For that reason, plaintiff is wrong to contend that, because it "continues to represent the majority of horsemen who race in Massachusetts," (Compl. ¶ 53), it remains "the horsemen's group." Under the IHA, it does not matter who represents the majority of horsemen in the state; for the purposes of this case, it matters only who represents the majority of those racing (1) at the Brockton Fairgrounds (2) in a race subject to interstate off-track wagering (3) on a particular race day. Because the stall application of MAS requires horsemen to consent to be represented by MassTHA with respect to the races held at Brockton Fairgrounds, MassTHA appears to be "the horsemen's group" as defined in the IHA.

Second, and more importantly, even if MassTHA were not "the horsemen's group" as defined in the statute, defendants still would not have violated the IHA simply by entering a purse agreement under which they consent to interstate off-track wagering. Section 3004 of the

---

[5] The complaint also seems to suggest that defendants violated the IHA by entering a purse agreement that fails to protect the safety and financial interests of horsemen. (Compl. ¶¶ 32, 35, 56). The IHA, however, is a fairly narrow statute that regulates only interstate off-track wagering. *See Kentucky. Div., Horsemen's Benev. & Protective Ass'n v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1413 (6th Cir. 1994). It says nothing about track safety, nor does it require any particular distribution of interstate off-track wagering proceeds between host racing association and horsemen's group. *See* 15 U.S.C. § 3004; *Hialeah, Inc. v. Fl. Horsemen's Benev. & Protective Ass'n, Inc.*, 899 F. Supp. 616, 624 (S.D. Fla. 1995) (holding that allegation that racing association retained excessive "takeout" of off-track wagering revenue does not state a violation of IHA).

The complaint also alleges that defendants violated the IHA by entering a purse agreement under which the parties consented to simulcasting live races held at Brockton Fairgrounds. However, the IHA regulates only interstate off-track wagering, not simulcasting. *See Kentucky Div., Horsemen's Benev. & Protective Ass'n*, 20 F.3d at 1412 (noting that IHA does not even mention simulcasting).

IHA prohibits only the acceptance of interstate off-track wagers absent the consent of, among others, the relevant horseracing association (here, MAS).  15 U.S.C. 3004(a)(1).  Section 3004(a)(1)(A) further provides that before the horseracing association can consent to interstate off-track wagering, it must have a written agreement with the horsemen's group setting forth how interstate off-track wagering proceeds will be distributed.  However, simply entering a written agreement that contemplates interstate off-track wagering with a group other than "the horsemen's group" is not an actionable violation of the IHA.

The agreement between the horseracing association (MAS) and the horsemen's group (MassTHA) is only relevant under the IHA insofar as it is a precondition for the horseracing association's ability to consent to an off-track betting system's acceptance of interstate off-track wagers.  The complaint, however, does not allege that the MAS has given any such consent.  More significantly, the complaint does not allege that any off-track betting system has accepted interstate off-track wagers from races run at Brockton Fairgrounds without that consent.  It is possible—although it is not necessary to decide—that the IHA would be violated if an off-track betting system accepted wagers in reliance on consent given by the MAS that was itself premised on a faulty written agreement with the wrong horsemen's group.  However, unless interstate off-track wagers are accepted without the proper consent, there is no actionable violation of the IHA.

The damages section of the IHA supports this reading of the statute.  Section 3005 states that "[a]ny person accepting any interstate off-track wager in violation of this chapter shall be civilly liable for damages to the host State, the host racing association and the horsemen's group . . . based on the total of off-track wagers."  15 U.S.C. § 3005.  Thus, the only entity that can be liable for damages under the IHA is the one that accepts interstate off-track wagers without having obtained the proper consent, and the only damages remedy available is a share of the

proceeds from interstate off-track wagers. The statute does not provide for any liability on behalf of horsemen's groups or racing associations that enter into purse agreements that allegedly violate the requirements of § 3004(a)(1)(A).

While the IHA does authorize "injunctive relief to restrain violations" of the Act, 15 U.S.C. § 3006(a), that provision should be read narrowly. The First Circuit has been reluctant to read into the IHA rights of action that are not expressly provided by the fact of the statute. *See Sterling Suffolk Racecourse LP v. Burrillville Racing Assoc., Inc.*, 989 F.2d 1266 (1st Cir. 1993) (holding that IHA does not imply private right of action in favor of "60-mile tracks"). Section 3004(b)(1)(A) of the Act requires—in addition to the consent of the horseracing association, host racing commission, and off-track racing commission as required in § 3004(a)—that off-track betting offices "shall obtain the approval of all currently operating tracks within 60 miles of such off-track betting office" prior to accepting wagers. In *Sterling Suffolk Racecourse*, the defendant racetrack and off-track betting office routinely violated § 3004(b)(1) by accepting wagers on races run at Suffolk Downs racetrack without first obtaining Suffolk's consent. 989 F.2d at 1267-68. Suffolk sought to enjoin the defendant racetrack from accepting wagers in violation of § 3004(b)(1). However, as noted by the First Circuit, the IHA's damages provisions, 15 U.S.C. §§ 3004, 3006, does not include "60-mile tracks" among the parties that are entitled to bring actions under the Act, nor is its damages calculation formula relevant to those tracks. *Sterling Suffolk Racecourse*, 989 F.2d at 1270. Thus, while the IHA requires off-track betting offices to obtain the consent of tracks within 60 miles, it does not provide a remedy for those tracks in the event that a betting office fails to obtain its consent. *Id.* at 1271. Because the IHA explicitly provides a remedy for other parties, but not those tracks, the First Circuit declined to read a private cause of action for such tracks into the Act. *Id.* at 1270 (stating that "[w]hen a statute

expressly provides remedies, courts must be extremely reluctant to expand its sweep by augmenting the list of prescribed anodynes").

Similarly, § 3005 makes clear that the only remedy contemplated under the IHA is that those who accept wagers without the appropriate consent must pay a portion of the proceeds received to the host state, host racing association, and horsemen's group.  The statute says nothing about a remedy for a horsemen's group that believes that a horseracing association has entered into a purse agreement with the wrong horsemen's group.  Following *Sterling Suffolk Racecourse*, § 3004(a)(1)(A) is best understood as a directive to a private party that does not give rise to a private right of action.  *See* 989 F.2d at 1271.  Thus, even if MassTHA were not "the horsemen's group" as defined in the IHA, the Act does not give NEHBPA a right to relief from defendants for entering a purse agreement.

### IV.     Conclusion

For the foregoing reasons, the complaint fails to state a claim upon which relief can be granted.  Accordingly, the motions to dismiss of defendant Massachusetts Thoroughbred Horsemen's Association and defendant Middleborough Agricultural Society are GRANTED. **So Ordered.**

Dated: September 28, 2016

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge